## POWELL v. STATE OF INDIANA.

[No. 24,127.   Filed May 31, 1923.]

1. CONSTITUTIONAL LAW.— *Mandatory Declarations.*— Constitutional declarations, regardless of the subject-matter, are imperative on legislative action unless they obviously and unmistakably appear to be merely directory.   p. 260.

2. CONSTITUTIONAL LAW.— *Statutes.— Title.*— A constitutional declaration concerning the titles of acts is mandatory.   p. 260.

3. STATUTES.—*Constitutionality.—Presumption.*—Legislative action is presumed to be constitutional and it will be so declared unless its invalidity is clearly shown.   p. 260.

4. STATUTES.—*Amendment.—Title.*—The scope of the title of an act will be determined by the restrictive construction placed upon such title by the legislature when passing· the act, and of the subject-matter properly connected therewith, and the title will not be enlarged to cover an amendment by a later act which might have been included in the original act, but was not.   p. 260.

From St. Joseph Superior Court; *Andrew N. Hildebrand,* Judge Pro Tem.

Prosecution by the State of Indiana against Louis Powell for having intoxicating liquor in his possession. From a judgment of conviction, the defendant appeals. *Reversed with instructions.*   (Ewbank, J., dissenting.)

*Shively, Gilmer, Arnold & Doran* and *Dudley M. Shively,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant, in the court below, was charged by affidavit, tried and convicted of having in-

toxicating liquor in his possession. §8356d Burns' Supp. 1921, Acts 1921 p. 736, §1, amending §4, Acts 1917 p. 15, §8356d Burns' Supp. 1918.

The affidavit was in two counts. The first charged unlawful possession of intoxicating liquor, and the second, the unlawful receiving of intoxicating liquor from a carrier. The second count was withdrawn from the jury.

Appellant's motion in arrest, on the ground that the affidavit did not state facts sufficient to constitute a public offense, was overruled. This ruling, and the overruling of his motion for a new trial, are assigned as errors.

The legality of appellant's conviction is made to depend upon whether or not an indictment or affidavit charging the mere possession alone of intoxicating liquors states a public offense. Appellant has duly presented this question both by his motion in arrest and by his motion for a new trial, wherein he assigned as causes therefor certain instructions by him tendered and by the court refused.

Section 1, *supra*, contains the word "possess," thereby adding an offense not intended to be created by the act amended. On behalf of appellant it is asserted that the new offense is not a matter within the title of the act thus amended, and as the title of the latter act was not amended to include the new offense, the amendment in the particular mentioned was therefore unconstitutional and void under Art. 4, §19, Constitution of Indiana. On the part of the State it is insisted that while the word "possess" was not included in the title of the old act, yet, as the prohibition of the possession of liquor was a reasonable incident to the enforcement of the other provisions of the same law, it was therefore within the purview of the subject of the original act.

This precise question was presented, fully considered and decided against the contention of the state in case of *Crabbs* v. *State* (1923), *ante* 248. However, the attorney-general seems to have the impression that the statute in question is governed by some exceptional constitutional principle not applicable to statutes generally. As we are advised by the decided cases and by text writers on constitutional law, constitutional declarations, regardless of the subject-matter, are imperative on legislative action unless they obviously and unmistakably appear to be merely directory.

The particular constitutional provision involved in the instant case is explicit, admits of no doubt, and is mandatory. Hence, the question whether or not the title of the amended act in question is broad enough to let in the amendment is a judicial one to be decided by the court like all other questions involving important consequences. However, it may be noted that legislative action is presumed to be constitutional and it will be so declared unless its invalidity is clearly shown. With these elementary principles in mind, and assuming that all are familiar with the constitutional provi· ·, Art. 4, §19, Constitution, we submit these additional observations.

The difficulty in most cases where the title to a statute is involved is in determining with legal precision the subject of the act, as well as the matter properly connected with that subject. In the case at bar, let it be conceded that the subject of the 1917 act, *supra*, is "intoxicating liquor." If it be granted that this subject is sufficiently comprehensive to admit the word "possess" as a matter properly connected therewith, nevertheless the legislature, as it had the power to do, clearly and undoubtedly intended to restrict the matters connected with the subject of the

act to those therein specifically stated. It will not do to say that the matters thus positively limited to the subject may be, by construction, enlarged to let in a matter plainly never contemplated by the framers of the title. The failure of the attorney-general to notice the restrictions placed upon the matters intended to be considered properly connected with the subject of this particular legislation, defeats his contention which rests entirely upon what the legislature might have done under the general subject of the act, rather than what it did actually do. Cooley, Constitutional Limitations (7th ed.) 212.

Our attention has been called to the following decisions of this court: *State* v. *Adamson* (1860), 14 Ind. 296; *Thomasson* v. *State* (1860), 15 Ind. 449; *Hingle* v. *State* (1865), 24 Ind. 28; *Williams* v. *State* (1874), 48 Ind. 306; *State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313. All of these cases, save one, originated through an alleged violation in one form or another of the liquor laws of this state wherein the title of the act defining the offense charged was attacked. In each of these cases, whether for the giving of intoxicating liquors to a minor, selling on Sunday, giving to a person in the habit of becoming intoxicated, for failure to provide a separate room for the sale of intoxicating liquor, or the conferring of jurisdiction on both the common pleas and circuit courts to try liquor violations, the titles of the several acts thus questioned invariably were "An act to regulate and license," or "An act to better regulate and restrict," but none of these titles evinced a purpose or intention of the legislature to expressly restrict the matters connected with the subject; hence, the cases thus relied on by the state may be readily distinguished from the case at bar.

Reference has been made to other decisions of this court on other subjects involving questions similar to

the one now before us, but, after a careful examination of each of these decisions, we are convinced that they have no controlling influence on the present controverted question.

Among the cases cited by the attorney-general from other jurisdictions, it seems that he has selected and especially relies on the case of *In re Crane* (1915), 27 Idaho 671, 151 Pac. 1006, L. R. A. 1918A 9492. Crane was arrested upon a charge of having intoxicating liquor in his possession in Latah county, Idaho, which, under the law of that state, was a prohibition district. Crane sought a writ of *habeas corpus* to procure his release from custody. He challenged the validity of that law upon several grounds, one of which was, that the alleged offense of possession of intoxicating liquor defined by the act was not expressed in its title, and hence, the possession clause was unconstitutional and void because in violation of Art. 3, §16, of the Idaho Constitution. The Idaho Constitution, in the particular mentioned, is practically the same as the constitution of this state. The title of the Idaho act (Idaho Laws 1915 p. 41), is as follows: "Defining prohibition districts and regulating and prohibiting the manufacture, sale, keeping for sale * * * or gift, and traffic in intoxicating liquors and prohibiting drinking and drunkenness in public places in such prohibition districts, and fixing fines and penalties, and repealing chapter 27 and chapter 99 of the Session Laws of 1913."

The court, in denying the writ, said: "The act under consideration treats of but one general subject, namely, to limit the use of intoxicating liquors. There is nothing contained in the act that is not germane to the general subject or purpose expressed in the title."

We have no fault to find with this ruling. In fact, it is in line with the decisions of this court under like facts and circumstances. In preparing the matters

properly connected with the subject of the act, the word
"regulating" was used in its broad sense. The language
with which it is connected at once suggests power and
authority to enact laws essential and germane to the
subject expressed in the title. The marked difference
in the legal effect of the title to the Idaho act and the
one before us, namely, "An act prohibiting the manu-
facture, sale, gift, advertisement or transportation of
intoxicating liquor except for certain purposes and
under certain conditions," precludes every reasonable
effort to harmonize them into one common acceptation.

The case of *Crane* v. *Campbell* (1917), 245 U. S. 304,
38 Sup. Ct. 98, 62 L. Ed. 304, is cited by the state. This
is the Idaho case in the Supreme Court of the United
States, where the sole question presented and decided
was: Did the Idaho law contravene §1 of the Four-
teenth Amendment to the federal Constitution? It was
answered in the negative. The power of a state to
enact laws tending to suppress traffic in intoxicating
liquors was reaffirmed. We have no such question in
the instant case.

The state also relies on the case of *Street* v. *Lincoln
Safe Deposit Co.* (1920), 267 Fed. 706. The complain-
ant in that case was the lessee of certain rooms in a
storage warehouse operated by the defendant company,
in which rooms he had a quantity of lawfully acquired
liquors. It was alleged that the revenue officers were
asserting and claiming that the continued possession
of such liquors would subject both the complainant and
the company to the penalties of the act; that the com-
pany is threatening to deliver the liquors to the revenue
officers to be dealt with as such under the provisions
of the National Prohibition Act (41 Stat. at L. 305).
The revenue officers also were made defendants and in-
junctive relief was prayed. The district court denied
relief and held that the Volstead Act, §33, permitted the

possession of intoxicating liquor for personal use in one's own home, but that it did not authorize possession outside thereof for such use. On appeal to the United States Supreme Court (*Street* v. *Lincoln Safe Deposit Company* (1920), 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548), the judgment of the district court was reversed. In the course of the opinion in that case, it was said: "But since §33 declares that the uses to which it is admitted the plaintiff intends to devote his liquors are not unlawful, obviously this section does not apply to the case, for the unlawfulness declared by it is conditioned upon the intended use in violating the act." Again referring to §33 relative to the possession of liquors after February 1, 1920, it was said: "Assuming that the unexplained presence of the liquors in the company's warehouse would give rise to the prescribed presumption, yet, if that presumption should be rebutted by appropriate testimony (as it is in this case by admissions) that the liquor to which it is applied is not being kept for the purpose of sale, barter, exchange, furnishing or otherwise disposing of it in violation of the provisions of the title, the implication is plain that the possession should be considered not unlawful, even though it be by a person 'not legally permitted'—that is by a person not holding a technical permit to possess it, such as is provided for in the act."

This is a brief narrative of the Street case. Its inapplicability to the case at hand is apparent.

It will serve no good purpose to review other cases to which our attention has been called, other than to say, they may be as readily distinguished.

The case of *Schmitt, Supt.,* v. *F. W. Cook Brewing Co.* (1918), 187 Ind. 623, 3 A. L. R. 270, involving only the question of the constitutionality of the 1917 act, *supra,* has not been cited, yet we believe it is entitled to notice. In that case the outstanding and all-pre-

dominating question in the mind of the court, and the one around which the parties thereto centered all of their contentions, was, Had the legislature power to prohibit the manufacture and sale of intoxicating liquor? Three times the opinion refers to this question as the one being considered, and closes with the express declaration, that, "the act is valid as to all its provisions brought in question." Thus, it is apparent that in reading this opinion we must keep in mind the question before the court for decision, and not confuse those matters to which reference was made as to what the legislature might have done and used as an emphasizing argument as to the power of the legislature to regulate, control, suppress or prohibit entirely the traffic in intoxicating liquor. The title of the act was regarded as sufficient to cover the then legislative intention, and further than that the court was not concerned.

At times our attention has been called to the statement, "But it was apparently the intention of the legislature to make it impossible for a person to obtain possession of liquor in this state," found in *Banks* v. *State* (1919), 188 Ind. 353, 357. That statement was made in connection with the observation that "the statute under consideration (§4, *supra*) does not make it unlawful for a person to have intoxicating liquor in his possession in this state for his own use." Thus we have two conclusions on what was purposed by the act then under consideration, and both referring to legislative intention: One, legislative design to make the possession of intoxicating liquors lawful when possessed for home use, and the other, an intention to make such liquors difficult to obtain. To carry this decision a little farther, it would seem that the legislature aimed at the traffic as a means of limiting the use of intoxicating liquors to the minimum, and eventually, entirely. In

order that its intention might not be misunderstood, or the act enlarged by construction, it used its power in that regard by restricting the subject-matter.

Upon the authority of the Crabbs case, *supra*, and for the reasons herein briefly pointed out, the judgment in the instant case must be reversed.

Judgment reversed, with instructions to the trial court to sustain appellant's motion in arrest.

Ewbank, J., dissents.

## DISSENTING OPINION.

EWBANK, J.—The question for decision is whether or not a provision that "It shall be unlawful for any person to * * * possess * * * any intoxicating liquor * * * except as in this act provided" is within the title of "an act prohibiting the manufacture, sale, gift, advertisement or transportation of intoxicating liquor," etc. (Acts 1921 p. 736, §8356d Burns' Supp. 1921). The constitution of Indiana requires that, "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title" (Art. 4, §19, Constitution). The subject expressed in the title of the act under consideration is prohibiting (among other things) the sale and transportation of intoxicating liquor. Therefore the question for decision narrows to whether or not prohibiting the possession of intoxicating liquor, "except as in the act provided," is a matter properly connected with the prohibition of its sale or transportation. The statute, as amended in 1921, authorizes the possession by pharmacists and others of alcohol for use for medical, mechanical and scientific purposes, and by certain persons of wine for sacramental purposes, under very strict regulations. And if the legislature shall have decided that the most effective method of preventing unlawful sales was to forbid anybody to have possession

of any intoxicating liquors at all except as so provided in the statute and under those restrictions, may the court adjudge that in attempting to give effect to such decision it went outside of "matters properly connected with" the subject of prohibiting sales? Or if the legislature decided that it could effectually prohibit the transportation of liquor only by forbidding its possession to all but those who should receive it for medicinal, mechanical, scientific or sacramental purposes, under the strict regulations imposed, may the court adjudge that prohibiting its possession except for those purposes and under those regulations was not a "matter properly connected with" prohibiting its transportation.

The original act of 1917, Acts 1917 p. 15, §8356a *et seq.* Burns' Supp. 1918, which was amended by the act of 1921, Acts 1921 p. 736, §8356a Burns' Supp. 1921, now under consideration, made it unlawful "to keep any intoxicating liquor, with intent to sell * * * except as in this act provided." (Acts 1917 p. 15, §4, *supra.*) And in deciding the general proposition that said act of 1917 was constitutional and within the title as above set out, after citing many authorities, this court said (my italics) : "It will be seen by the authorities which we have heretofore set out that to prohibit the traffic the legislature may define as an intoxicant that which is far from intoxicating, in order to prevent the manufacture and sale of that which is intoxicating; *that it may prevent the possession of liquor;* that it may provide that the place where liquor is kept or manufactured may be declared a nuisance and closed; that it may designate those who are to handle and dispense liquor and upon what terms; that it may forbid advertisements of liquor; that it may provide what shall make a *prima facie* case of violation of the law. *All of these provisions are properly connected with the purpose of the legislature to prevent the traffic in intoxicating*

*liquor as a beverage and are therefore within the title of the act."* Schmitt, Supt., v. F. W. Cook Brewing Co. (1918), 187 Ind. 623, 634, 120 N. E. 19, 3 A. L. R. 270.

If forbidding the possession with intent to sell is within the title because a matter properly connected with the purpose of forbidding the traffic, as expressed in the title, it seems clear to me that forbidding such possession even though the intent is not shown is also a matter properly connected with the same purpose. A law limiting the quantity of intoxicating liquor which a person may possess at any time, by way of aiding in the enforcement of a law forbidding sales, has been upheld as constitutional. *Delaney* v. *Plunkett* (1916), 146 Ga. 547, 91 S. E. 561, L. R. A. 1917D 926, Ann. Cas. 1917E 685. And forbidding the possession of any at all, except under the very strict regulations imposed on pharmacists, and on those who obtain alcohol for medicinal, mechanical or scientific purposes, or wine for use in the ceremonies of religion, would be no less effective as an aid in the enforcement of a law which forbids all sales and all transportation of intoxicating liquors except for the purposes named.

I think that forbidding the possession of intoxicating liquor "except as in the act provided" is a matter properly connected with the subject expressed in the title, even as narrowed by the use of the specific terms "sale," "transportation," etc., instead of words covering the whole subject of legislation concerning intoxicating liquors. For these reasons I respectfully dissent.